## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

**TAMMY STOKES,**

              **Plaintiff,**                **CIVIL ACTION NO. 13-cv-13068**

        **v.**                    **DISTRICT JUDGE LINDA V. PARKER**

**COMMISSIONER OF**           **MAGISTRATE JUDGE MONA K. MAJZOUB**
**SOCIAL SECURITY,**

            **Defendant.**
_____/

### REPORT AND RECOMMENDATION

Plaintiff Tammy Stokes seeks judicial review of Defendant Commissioner of Social Security's determination that she is not entitled to social security benefits for her physical and mental impairments under 42 U.S.C. § 405(g). (Docket no. 1.) Before the Court are Plaintiff's Motion for Summary Judgment (Docket no. 8) and Defendant's Motion for Summary Judgment (Docket no. 11). The motions have been referred to the undersigned for a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) and (C). (Docket no. 3.) The undersigned has reviewed the pleadings, dispenses with a hearing, and issues this Report and Recommendation pursuant to Eastern District of Michigan Local Rule 7.1(f)(2).

### I.      RECOMMENDATION

The undersigned recommends that Plaintiff's Motion for Summary Judgment (Docket no. 8) be DENIED and that Defendant's Motion for Summary Judgment (Docket no. 11) be GRANTED.

## II.     PROCEDURAL HISTORY

Plaintiff filed an application for a period of disability and disability insurance benefits with a protective filing date of January 4, 2011, alleging disability beginning May 10, 2009, due to interstitial cystitis and post-traumatic stress disorder (PTSD). (*See* TR 19, 160.) The Social Security Administration denied Plaintiff's claim on April 11, 2011, and Plaintiff requested a *de novo* hearing, which was held on February 14, 2012, before Administrative Law Judge (ALJ) Peter N. Dowd, who subsequently found that Plaintiff was not entitled to benefits because she was capable of performing past relevant work. (TR 19, 31.) The Appeals Council declined to review the ALJ's decision (TR 1-3), and Plaintiff commenced this action for judicial review. The parties then filed cross motions for summary judgment, which are currently pending before the Court.

## III.     PLAINTIFF'S TESTIMONY, MEDICAL EVIDENCE, AND THE VOCATIONAL EXPERT'S TESTIMONY

### A.     Plaintiff's Testimony and the Medical Evidence of Record

In her brief, Plaintiff sets forth a short procedural history of this matter and discusses the ALJ's basis for denying her benefits, but she does not directly discuss her testimony or medical record. (Docket no. 8 at 5.) Fleeting references to Plaintiff's testimony and medical record are made when Plaintiff argues credibility. (Docket no. 8 at 10-11.) Defendant's account of Plaintiff's testimony and medical record is largely consistent with the ALJ's except that Defendant's account includes almost solely the evidence in support of Defendant's position. (*See* docket no. 11 at 7-12.) The undersigned has conducted an independent review of the hearing transcript and Plaintiff's medical record, but for the reasons discussed *infra*, it is unnecessary to summarize them herein. Therefore, Plaintiff's medical record and testimony as set forth in the ALJ's decision (TR 23-26, 28-30) and Plaintiff's brief (Docket no. 8 at 10-11) are adopted; the undersigned will incorporate

2

comments and citations as necessary throughout this Report and Recommendation.

**B.     Vocational Expert's Testimony**

First, the Vocational Expert (VE) stated that she had studied the exhibits in Plaintiff's Social Security file pertaining to her work history and had listened to Plaintiff's testimony given at the hearing regarding her past work. (TR 78.) The VE also testified that she did not need any other information about Plaintiff's past work before testifying in this matter. (TR 78.) After acknowledging that her testimony would be consistent with the Dictionary of Occupational Titles (DOT), the VE classified Plaintiff's past work as a veterinary assistant at a medium exertional level and semi-skilled under the DOT, her work as a manager of a retail vending company as light and semi-skilled, and her work as a secretary/office clerk as sedentary and semi-skilled. (TR 79.)

The ALJ asked the VE whether a hypothetical person of the same age, education, and work experience as Plaintiff who can "occasionally lift and/or carry including upward pulling weights of 20 pounds," "frequently lift and/or carry including upward pulling weights of 10 pounds," "stand and/or walk with normal breaks for a total of about six hours in an eight hour work day," and "sit with normal breaks for a total of more than six hours on a sustained basis on an eight hour work day;" would "need to avoid concentrated exposure to fumes, odors, dusts, gasses and poor ventilation;" and "should also avoid concentrated exposure to noise in a potential work setting" could perform Plaintiff's past relevant work. (TR 79-80.) The VE testified that such an individual could perform Plaintiff's past relevant work as a retail manager and as a secretary/office clerk. (TR 80.)

The ALJ then asked the VE to clarify that Plaintiff's past work as a secretary/office clerk at an automobile dealership was truly clerical and not managerial. (TR 80.) The VE testified affirmatively. (TR 80.) The ALJ then asked the VE to clarify that Plaintiff's past management work

3

was performed for the company that her husband had previously co-owned and currently owns by himself. (TR 80-81.) Again, the VE answered in the affirmative. (TR 81.) Next, the ALJ asked the VE whether an individual who performs secretarial or clerical work would have some ability to use the restroom during the day, particularly if that individual was semi-skilled. (TR 81.) The VE testified that such an individual would have that ability. (TR 81.) Additionally, the ALJ asked the VE whether a manager has the ability to arrange his typical work day. (TR 81.) The VE answered that a manager does have that ability. (TR 81.)

Plaintiff's attorney then asked the VE what impact an individual's limitation of working less than eight hours per day would have on the availability of employment. (TR 81.) Before the VE could answer, the ALJ interjected that as a manager for her husband's company, Plaintiff had the ability to organize her work day, but he wasn't sure about the terms of her clerical job. (TR 81.) The ALJ then asked the VE whether she could determine from the record how Plaintiff organized her work day or how long a typical work day for Plaintiff was. (TR 81-82.) The VE responded that she could not make such a determination. (TR 82.)

After a brief discussion between Plaintiff's counsel and the ALJ regarding the nature of Plaintiff's past work as a manager for her husband's company, which owned and operated two hot dog stands outside of two home improvement stores, the ALJ opined that it is one of the most flexible jobs available. (TR 82-83.) The VE then agreed with the ALJ's statement. (TR 83-84.)

## IV.   ADMINISTRATIVE LAW JUDGE'S DETERMINATION

The ALJ found that Plaintiff met the insured status requirements of the Social Security Act through December 31, 2014, and that she did not engage in substantial gainful activity from the alleged onset date of May 10, 2009. (TR 21.) The ALJ then found that Plaintiff suffered from two severe impairments: interstitial cystitis (IC) and a history of migraine headaches. (TR 22.) The ALJ

4

also found, however, that Plaintiff's substance abuse disorder and PTSD were non-severe and that

her impairments did not meet or medically equal the severity of an impairment listed in 20 C.F.R.

Part 404, Subpart P, Appendix 1.  (TR 26-27.)  The ALJ then determined that Plaintiff had the

following residual functional capacity (RFC):

> [C]laimant has the maximal physical residual functional capacity (RFC) to perform
> light exertional work activities as defined in 20 CFR 404.1567(b) except as restricted
> by the following: the claimant should avoid concentrated exposure to excessive noise
> and to fumes, odors, dusts, gases and poor ventilation.

(TR 27.)  Subsequently, in reliance on the VE's testimony, the ALJ found that Plaintiff could

perform her past relevant work as a retail manager for her husband's company and possibly her past

clerical work at an automobile dealership.  (TR 30-31.)  Therefore, the ALJ found that Plaintiff was

not disabled under the Social Security Act at any time from May 10, 2009, through the date of the

ALJ's decision.  (TR 31.)

## V.    LAW AND ANALYSIS

### A.    Standard of Review

Pursuant to 42 U.S.C. § 405(g), this Court has jurisdiction to review the Commissioner's

final decisions.  Judicial review of the Commissioner's decisions is limited to determining whether

his findings are supported by substantial evidence and whether he employed the proper legal

standards.  *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Walters v. Comm'r*, 127 F.3d 525,

528 (6th Cir. 1997).  Substantial evidence is more than a scintilla but less than a preponderance; it

is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"

*Richardson*, 402 U.S. at 401 (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938));

*Walters*, 127 F.3d at 528.  It is not the function of this Court to try cases *de novo*, resolve conflicts

in the evidence, or decide questions of credibility.  *See Brainard v. Sec'y of Health and Human*

5

*Servs.*, 889 F.2d 679, 681 (6th Cir. 1989); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).

In determining the existence of substantial evidence, the court must examine the administrative record as a whole. *See Kirk v. Sec'y of Health and Human Servs.*, 667 F.2d 524, 536 (6th Cir. 1981), *cert. denied*, 461 U.S. 957 (1983). If the Commissioner's decision is supported by substantial evidence, it must be affirmed, even if the reviewing court would decide the matter differently, *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983), and even if substantial evidence also supports the opposite conclusion. *See Her v. Comm'r*, 203 F.3d 388, 389-90 (6th Cir. 1999); *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (en banc) (noting that the substantial evidence standard "presupposes that there is a zone of choice within which the decisionmakers can go either way, without interference by the courts").

## B.    Framework for Social Security Determinations

Plaintiff's Social Security disability determination was made in accordance with a five-step sequential analysis. In the first four steps, Plaintiff was required to show that:

(1)    Plaintiff was not presently engaged in substantial gainful employment; and

(2)    Plaintiff suffered from a severe impairment; and

(3)    the impairment met or was medically equal to a "listed impairment;" or

(4)    Plaintiff did not have the residual functional capacity (RFC) to perform relevant past work.

*See* 20 C.F.R. § 404.1520(a)-(f). If Plaintiff's impairments prevented Plaintiff from doing past work, the Commissioner, at step five, would consider Plaintiff's RFC, age, education, and past work experience to determine if Plaintiff could perform other work. If not, Plaintiff would be deemed disabled. *See id.* at § 404.1520(g). The Commissioner has the burden of proof only on "the fifth step, proving that there is work available in the economy that the claimant can perform." *Her*, 203

6

F.3d at 391.  To meet this burden, the Commissioner must make a finding "supported by substantial evidence that [the claimant] has the vocational qualifications to perform specific jobs."  *Varley v. Sec'y of Health and Human Servs.,* 820 F.2d 777, 779 (6th Cir. 1987).  This "substantial evidence" may be in the form of vocational expert testimony in response to a hypothetical question, "but only 'if the question accurately portrays [the claimant's] individual physical and mental impairments.'" *Id.* (citations omitted).

C.      **Analysis**

The Social Security Act authorizes "two types of remand: (1) a post judgment remand in conjunction with a decision affirming, modifying, or reversing a decision of the [Commissioner] (a sentence-four remand); and (2) a pre-judgment remand for consideration of new and material evidence that for good cause was not previously presented to the [Commissioner] (a sentence-six remand)."  *Faucher v. Sec'y of Health and Human Servs.*, 17 F.3d 171, 174 (6th Cir. 1994) (citing 42 U.S.C. § 405(g)).  Under a sentence-four remand, the Court has the authority to "enter upon the pleadings and transcript of the record, a judgment affirming, denying, or reversing the decision of the [Commissioner], with or without remanding the cause for a hearing.  42 U.S.C. § 405(g).  Where there is insufficient support for the ALJ's findings, "the appropriate remedy is reversal and a sentence-four remand for further consideration."  *Morgan v. Astrue*, 10-207, 2011 WL 2292305, at *8 (E.D.Ky. June 8, 2011) (citing *Faucher*, 17 F.3d at 174).  Plaintiff argues that this matter should be reversed or remanded under sentence four because "[t]he Commissioner erred as a matter of law in assessing [Plaintiff's] credibility and by failing to properly evaluate the medical records of evidence and, thereby, forming an inaccurate hypothetical that did not accurately portray [Plaintiff's] impairments."  (Docket no. 8 at 6.)

*1.  Plaintiff's Hypothetical Question Argument*

7

To the extent Plaintiff argues that the ALJ erred in the formulation of the hypothetical questions presented to the VE, the ALJ is only required to incorporate in his hypothetical questions those limitations that he finds credible and supported by the record.  *See Casey v. Sec'y of Health and Human Servs.*, 987 F.2d 1230, 1235 (6th Cir. 1993).  Here, the ALJ's hypothetical question presented all of the limitations included in Plaintiff's RFC–that is, all of the limitations that the ALJ found credible.  The VE testified that Plaintiff could perform her past relevant work.  Thus, the ALJ's hypothetical question was not improper, and Plaintiff's argument fails, as her entire discussion of this matter is limited to several pages of legal standards and a few vague references to her testimony and medical records.  (*See* docket no. 8.)  Plaintiff does not discuss why she believes the ALJ erred, what medical records or opinions or evidence the ALJ failed to properly consider, or what additional impairments the ALJ allegedly failed to include in his hypothetical question to the VE.  As the Court addressed in a similar matter wherein Plaintiff's counsel filed a substantially similar brief on this issue, any additional analysis "is an exercise left to the reader; . . . Plaintiff's summary judgment brief lack[s] any survey, much less meaningful discussion, of the medical record, and Plaintiff likewise fail[s] to provide any factual basis for h[er] challenge to the ALJ's [decision]."  *Fielder v. Comm'r of Soc. Sec.*, No. 13-10325, 2014 WL 1207865, *1 (E.D. Mich. Mar. 24, 2014) (Rosen, J.).  Thus, Plaintiff's Motion should be denied with regard to this issue.

### 2.  *Plaintiff's Past Relevant Work Argument*

Plaintiff also asserts that the ALJ erred in determining that Plaintiff could return to her past relevant work as a retail manager for her husband's company.  (*See* docket no. 8 at 12-13.)  Basically, Plaintiff asserts that the ALJ's determination should be remanded because it is inconsistent with a Seventh Circuit opinion, *Bjornson v. Astrue*, in which the court reasoned that

8

"[t]he critical differences between activities of daily living and activities in a full-time job are that a person has more flexibility in scheduling the former than the latter, can get help from other persons (in this case, [Plaintiff's] husband and other family members), and is not held to a minimum standard of performance, as she would be by an employer. 671 F.3d 640, 647 (7th Cir. 2012). The court further opined that "[t]he failure to recognize these differences is a recurrent, and deplorable, feature of opinions by administrative law judges in social security disability cases." (*Id.*)

Plaintiff's argument is flawed. First, the Seventh Circuit's opinion in *Bjornson*, while persuasive, is not binding on this Court. More importantly, the ALJ's determination in this case is, in fact, consistent with the *Bjornson* court's opinion. Here, the ALJ relied on the testimony of the VE, who stated that Plaintiff's past relevant work as a retail manager for her husband's business would afford the Plaintiff the ability to set her own schedule and use the restroom as needed in a typical work day. (TR 30; TR 81.) Also, the ALJ reasoned that "[t]he extraordinary flexibility of this job in a company owned and operated by the claimant's husband seems to me to be particularly suitable for the claimant . . . ." (TR 30-31.) Essentially, the ALJ found that the flexibility of Plaintiff's past relevant work for her husband's business would accommodate her limitations.

Plaintiff further argues that the ALJ's determination that Plaintiff is able to perform her past relevant work is incorrect because he assigned too much weight to Plaintiff's testimony regarding her ability to help out with her husband's business. (Docket no. 8 at 12.) This argument also fails, as the ALJ afforded little weight to Plaintiff's testimony, as discussed below.

### 3. *Plaintiff's Credibility Argument*

"[A]n ALJ's findings based on the credibility of the applicant are to be accorded great weight and deference, particularly since an ALJ is charged with the duty of observing a witness's demeanor and credibility." *Walters v. Comm'r*, 127 F.3d 525, 531 (6th Cir. 1997). But credibility assessments

9

are not insulated from judicial review.  Despite the deference that is due, such a determination must nevertheless be supported by substantial evidence.  *Id.*  An ALJ's credibility determination must contain "specific reasons . . . supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." SSR 96–7p.  "It is not sufficient to make a conclusory statement that 'the individual's allegations have been considered' or that 'the allegations are (or are not) credible.'"  *Id.*  "[T]he adjudicator may find all, only some, or none of an individual's allegations to be credible" and may also find the statements credible to a certain degree. *Id.*

Further, to the extent that the ALJ found that Plaintiff's statements are not substantiated by the objective medical evidence in the record, the Regulations explicitly provide that "we will not reject your statements about the intensity and persistence of your pain or other symptoms or about the effect your symptoms have on your ability to work . . . solely because the available objective medical evidence does not substantiate your statements." 20 C.F.R. § 416.929(c)(2).  The ALJ must consider: (1) the claimant's daily activities, (2) the location, duration, frequency, and intensity of the claimant's pain, (3) precipitating and aggravating factors; (4) the type, dosage, effectiveness, and side effects of any medication taken to alleviate pain or other symptoms, (5) treatment, other than medication, for pain relief, (6) any measures used to relieve the pain, and (7) functional limitations and restrictions due to the pain.  *See* 20 C.F.R. § 416.929(c)(3); *see also Felisky v. Bowen*, 35 F.3d 1027, 1039-40 (6th Cir. 1994) (applying these factors).

Plaintiff asserts that the ALJ erred when he found that Plaintiff was not credible because "[h]er testimony is backed up by the medical evidence. . . ."  (Docket no. 8 at 11.)  To support this argument, Plaintiff follows with vague references to her medical record:

10

First of all in a record by Dr. Oldendorf he indicated that she had a "history of chronic pelvic pain related to underlying interstitial cystitis." (Tr. 207) He also indicated his "fourteen-point review of systems is positive for appetite change, fatigue, weight loss, diarrhea, back pain, headaches, anxiety, depression, personality change, pelvic pain, and sexual dysfunction…" (Tr. 208) The pain also "worsens during any sort of movement" and that she also "reports increased urinary frequency, returning to her previous rates of having to urinate every 30 minutes." (Tr. 210) Also at (Tr. 221) it also indicates that "the longest she can hold her bladder is 30 minutes." Additionally, "her sleep is poor secondary to her pain and urinary frequency" as well. (Tr. 229) At (Tr. 339) it indicates bladder problems and that she had "bladder spasm since 9am." She also has undergone a "sacral nerve stimulator placement by Dr. Parag Patil on 08/20/2010 for interstitial cystitis" and "there also has been no improvement in her IC symptoms." (Tr. 396) Also in a Medical Source Statement by Dr. Ziccardi on 7/3/2012 he indicated she should lift/carry less than 10 lbs., stand/walk less than 2 hours, sit about/less than 6 hours in an 8 hour day. (Tr. 435) Also at Oakland Psychological Clinic she presented with symptoms of anxiety and depressed mood. (Tr. 252) She also had a diagnosis of PTSD as well. (Tr. 259) At (Tr. 333) it also reveals "chronic migraine" and that it is "getting worse" and she has had "3 since last week." (Tr. 333)

(*Id.*)     As with Plaintiff's hypothetical question argument, *supra*, Plaintiff's credibility argument is devoid of factual detail and legal analysis.  Even assuming, *arguendo,* that Plaintiff's medical records are consistent with her complaints, these consistencies are not sufficient to overturn the ALJ's credibility determination, as the evidence also supports the ALJ's findings.  In addition to considering Plaintiff's medical records, the ALJ considered the factors set forth in 20 C.F.R. § 416.929(c)(3) and found that Plaintiff's disability allegations were less than credible for the following reasons:

With regard to her IC symptoms, the record does note that the claimant was reporting serious pain and urinary symptoms on a chronic basis when she was referred to the University of Michigan in March 2011.  However, by June 2011, the claimant experienced 95 per cent improvement in pain symptoms and much better control of urinary symptoms with implantation of a sacral nerve stimulator and use of narcotic pain medications.  For several months, one assumes that the claimant could generally resume normal activities.  Still, even after the claimant was forced to stop taking narcotic pain medication in December 2010, she continued to report good relief of her symptoms just with the stimulator and non-narcotic pain medication.  In March 2011, she reported at least 50 per cent improvement in pain and improved stability of urinary symptoms (urgency or frequency no more than once every 30 minutes,

11

reportedly) and more stable nocturia; her urologist indicated that the claimant appeared to be in better health and spirits than ever before. This level of relief of symptoms remained stable for months; the claimant confirmed 50 per cent pain relief, improved urinary symptoms and more stable sleep during her October 2011 visit to her University of Michigan pain specialist. The claimant alleged at hearing that she experienced a "drastic" deterioration of her condition after this October 2011 treatment session, but there is no evidence to support this contention. She did not seek additional medical care despite her current allegations that her symptoms are essentially extreme in degree. At no time did she report experiencing weekly "bad days" which rendering her essentially bedridden. Her reports of drastic and sudden loss of stability in symptoms are, in short, unsubstantiated by the evidence of record.

The record also suggests that the claimant has remained capable of a greater range of activities than her alleged limitations would appear to allow. She continues to perform light chores, prepare meals, shop, drive, perform crafts, use a computer, and read. She indicates that she enjoys gardening and swimming in the summer. She and her husband own a boat which she is able to ride. She and her husband were able to travel out of the State of Michigan twice since 2009, once to visit relatives in Tennessee and once to go camping in West Virginia; her symptoms did not prevent her from making these trips. The record also strongly suggests that the claimant was engaged in non-paid work as a secretary at her husband's business with some consistency since 2009: in March 2010, before implantation of her current stimulator, the claimant reported herself to be employed as a secretary (Ex. 1F); in May 2010, also prior to her current stimulator, the claimant was described as being engaged in this secretarial work "fulltime" as her pain would allow (Ex. 1F); in October 2011, the claimant indicated that her urinary symptoms were resulting in some interference with her secretarial work, but it is clear she was attempting to perform this work (Ex. 10F). That this secretarial work is mentioned three times over the space of more than 1.5 years suggests that she was engaged in this work more often than she reported at the hearing; that she was attempting this work even before her most successful treatment mode (the sacral nerve implant) was engaged suggests that she is overall more capable from a physical standpoint than she alleges. The undersigned notes also that, despite her allegations regarding her urinary problems, the claimant was able to sit through most of the hearing which lasted longer than an hour without discomfort. At the end of the hearing for a very short period of time the claimant was rocking herself while seated in a chair and seemed to want to leave the hearing, possibly to use a restroom. However, she did not exhibit any other symptoms and limitations while I observed her at the hearing. The date of hearing may have been a "good" day, presumably, but the evidence as a whole strongly suggests that the claimant in general is more capable than she alleged in her testimony. There is no indication that she would experience such serious pain that work would be precluded, or that her urinary symptoms in general would occur to the extent that her bathroom needs could not be accommodated in the normal work setting of her past work as described below (even if she was required to leave her work site for a few minutes once or twice per hour). All in all, the claimant's

allegations regarding the limiting effects of her impairments are inconsistent with the evidence of record and not wholly credible.

(TR 28-29.)   There is substantial evidence in support of the ALJ's decision.   And where the Commissioner's decision is supported by substantial evidence, it must be affirmed, even if the reviewing court would decide the matter differently, *Kinsella*, 708 F.2d at 1059, and even if substantial evidence also supports the opposite conclusion.   *See Her,* 203 F.3d at 389-90.

### 4.   Waiver and Sanctions

The undersigned has carefully examined Plaintiff's counsel's submission and finds it thoroughly deficient and devoid of proper factual substance and legal analysis. Plaintiff's counsel's superficial, cut-and-paste, template approach to fulfilling his professional duty to substantively brief the issues presented for this Court's most serious consideration and determination fails to comply with all accepted rules of civil pleading and practice in this District.   The Court acknowledges that counsel may reduce costs and improve efficiency by using and inserting previously generated work product, such as any relevant applicable legal standards and specific rules. But Plaintiff's counsel's repeated failure to set forth factually specific, discernable, sound legal analyses in his briefing to this Court compels the waiver of any such arguments.   *See Kennedy v. Comm'r of Soc. Sec.*, 87 Fed.Appx. 464, 466 (6th Cir. 2003) ("[I]ssues which are 'adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived.'" *United States v. Elder*, 90 F.3d 1110, 1118 (6th Cir.1996)).   The "'court is under no obligation to scour the record for errors not identified by [the] claimant.'" *Bush v. Astrue*, No. 12-11790, 2013 WL 1747807, *14 (E.D. Mich. Jan 25, 2013) (Grand, M.J.) (quoting *Martinez v. Comm'r of Soc. Sec*., No. 09-13700 (E.D. Mich. Mar. 2, 2011)).   Therefore, Plaintiff's Motion should be denied.

As Chief Judge Rosen noted in *Fielder*, this is not the first time the Court has denied a

motion filed by Plaintiff's counsel for "reliance on conclusory assertions and absence of developed argument;" indeed, "nearly every Magistrate Judge in this District has expressed this concern with the work product of Plaintiff's counsel." 2014 WL 1207865, at *1 n.1 (collecting cases). Moreover, the Court warned Plaintiff's counsel that "this Court will carefully examine his submissions in future suits to ensure that they advance properly supported arguments that rest upon (and cite to) the facts of a particular case" and that failure to do so may result in either sanctions or referral for disciplinary proceedings. *Id.* Nevertheless, any consideration of an award of sanctions against Plaintiff's counsel in this case would be inappropriate as the instant Motion was filed prior to Chief Judge Rosen's decision in *Fielder*.

## VI. CONCLUSION

For the reasons stated herein, the undersigned recommends that Plaintiff's Motion for Summary Judgment (Docket no. 8) be DENIED and that Defendant's Motion for Summary Judgment (Docket no. 11) be GRANTED.

## <u>REVIEW OF REPORT AND RECOMMENDATION</u>

Either party to this action may object to and seek review of this Report and Recommendation, but must act within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). Filing objections which raise some issues but fail to raise others with specificity will not preserve all objections that a party might have to this Report and Recommendation. *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991);

14

*Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to Rule 72.1(d)(2) of the *Local Rules of the United States District Court for the Eastern District of Michigan*, a copy of any objection must be served upon this Magistrate Judge.

Within fourteen (14) days of service of any objecting party's timely filed objections, the opposing party may file a response.  The response shall be not more than five (5) pages in length unless by motion and order such page limit is extended by the Court.  The response shall address specifically, and in the same order raised, each issue contained within the objections.

Dated: July 29, 2014              s/ Mona K. Majzoub
                                  MONA K. MAJZOUB
                                  UNITED STATES MAGISTRATE JUDGE

## PROOF OF SERVICE

I hereby certify that a copy of this Report and Recommendation was served upon Counsel of Record on this date.

Dated: July 29, 2014              s/ Lisa C. Bartlett
                                  Case Manager

15